UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRSTEN SHEETS, JASON
KALAGHER and JANSON MURPHY,

      Plaintiffs,

v.                                  Case No: 8:15-cv-1674-T-30JSS

SORRENTO VILLAS, SECTION 5,
ASSOCIATION, INC., ARGUS
PROPERTY MANAGEMENT, INC.,
LINDA BENFORD, JAMES
TOMPKINS, BOB BRUNO, NANCY
HUBBARD, CLAUDIA DORNBACK,
HARLAN BUD FRIDDLE, JACK
MCCOPPEN and LOYOLA SIEP,

      Defendants.

_____/

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion for Protective Order and/or to Quash Subpoenas filed on March 9, 2016 (Dkt. 51) and Motion for Protective Order and/or to Quash Subpoenas filed on April 1, 2016 (Dkt. 56) (collectively, "Motions"). Defendants oppose the Motions (Dkts. 52, 60). Upon consideration, and for the reasons stated below, the Motions are granted in part and denied in part.

## BACKGROUND

Plaintiffs Kirsten Sheets ("Sheets"), Jason Kalagher ("Kalagher"), and Janson Murphy ("Murphy") allege that Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"). Sheets and Kalagher are married, and Murphy is Sheets's minor son. (Dkt. 32 ¶¶ 5, 6.) Plaintiffs reside in a condominium unit, which Sheets owns. (Dkt. 32 ¶¶ 1, 9.)

Defendants include the condominium association, the association's property management company, the association's individual officers and directors, and the individual property manager.  (Dkt. 32 ¶¶ 10-19.)

Sheets alleges that she suffers a handicap within the scope of the FHA and is on medical leave from work.  (Dkt. 32 ¶¶ 7, 22.)  She states that she has been "diagnosed with Ehlers-Danlos syndrome, Postural Orthostatic Tachycardia Syndrome (POTS) and Fibromyalgia, among other physical impairments."  (Dkt. 32 ¶ 22.)  Sheets claims that she "has a medical need for an animal that provides emotional support that alleviates one or more identified symptoms or effects of her disability" and acquired a dog to serve as her "emotional support animal." (Dkt. 32 ¶¶ 23, 24.)

Sheets installed an underground invisible fence to contain the dog, which Defendants allegedly contend is a violation of the condominium rules and declaration.  (Dkt. 32 ¶¶ 26, 28.) As a result, Plaintiffs allege that Defendants have violated the FHA by failing to make reasonable accommodations and modifications.  Plaintiffs also allege that Defendants have retaliated against them in violation of the FHA in numerous ways, including by contacting Sheets's employer and "tr[ying] to have her fired from her job."  (Dkt. 32 ¶ 203(p)).  Finally, Plaintiffs allege a claim of familial status discrimination for actions taken against Sheets's son. As a result of Defendants' actions, Sheets claims that she has "endured great emotional distress and embarrassment."  (Dkt. 32 ¶ 52.)  Plaintiffs seek relief including an injunction and punitive and compensatory damages.

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011).

A party is entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The term "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Pursuant to Rule 26(c), however, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order has the burden to demonstrate good cause. *Auto-Owners Ins. Co. v. Se. Floating Docks*, Inc., 231 F.R.D. 426, 429-30 (M.D. Fla. 2005). "'Good cause' is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

The court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter. Fed. R. Civ. P. 45(d)(3)(A)(iii). The court may also quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i). A party has standing to move to quash a subpoena directed at a non-party if the party alleges a

"personal right or privilege" with respect to the subpoenas.  *Auto-Owners Ins.*, 231 F.R.D. at

429 (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)).

## ANALYSIS

On February 29, 2016, Defendants Argus Property Management, Inc. ("Argus") and

Linda Benford ("Benford") served subpoenas to produce documents upon Sheets's medical

treatment provider, Sarasota Neurology, P.A., and two of Sheets's former employers, Regions

Bank and Oasis Outsourcing.   On March 29, 2016, Argus and Benford served additional

subpoenas to produce documents upon eight of the treating physicians or medical providers

who were included on Plaintiffs' amended expert witness disclosure.  In the Motions, Plaintiffs

seek protective orders or to quash all of these subpoenas.

## I.      Subpoena to Sarasota Neurology, P.A.

The subpoena to Sarasota Neurology, P.A. requests the production of "all documents

regarding Kirsten Sheets, including but not limited to" eleven categories of documents, which

include, *inter alia*, all of Sheets's medical records, all "data pertaining to the diagnosis,

treatment, and care of [Sheets]," all patient information forms, any bills for services and

statements indicating the total amount of the bill, all x-rays, "every written piece of paper

included within the patient's chart," and any MRI reports.  (Dkt. 51 at 23.)  The subpoena

further states that "[a]ll records requested should be all inclusive and should in no way be

limited to one incident."  (Dkt. 51 at 23.)

Plaintiffs assert that the subpoena is overbroad in that it is not limited to medical records

related to Sheets's claims of a disability under the FHA or to a claim of damages and seeks

information that is irrelevant to the claims and defenses.  Plaintiffs contend that, under the FHA,

the housing provider is limited to requesting disability-related information that is necessary to verify that the claimant is disabled and that describes the needed accommodation and shows the relationship between the disability and the need for the requested accommodation.  Plaintiffs also assert that the records are confidential and that Sheets does not waive her right to privacy as to any medical records or information.

Defendants contend that the documents from Sarasota Neurology, P.A. will allow them to determine the "full nature" of the symptoms or effects of Sheets's disabilities and her physical and mental impairments, without which it would be "impossible" to defend themselves against Plaintiffs' allegations.   Defendants also argue that the documents are relevant to Sheets's claims that she suffered from emotional distress and embarrassment.  Defendants also assert that Sheets waived her privacy interests in her medical records when she filed a claim based upon a physical and/or emotional disability.

### A.    Documents related to Sheets's physical impairments

To prevail on a reasonable accommodation claim under the FHA, a plaintiff must establish that (1) she is disabled or handicapped within the meaning of the FHA, (2) she requested a reasonable accommodation, (3) such accommodation was necessary to afford her an opportunity to use and enjoy her dwelling, and (4) the defendants refused to make the requested accommodation.  *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc*., 347 F. App'x 464, 467 (11th Cir. 2009).  A person is considered handicapped under the FHA if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities, [has] a record of having such an impairment, or [is] regarded as having such an impairment."  42 U.S.C. § 3602(h).

The Court agrees with Plaintiffs that the document requests are overbroad and seek information not relevant to the parties' claims and defenses. The subpoena is not limited in timeframe and also encompasses records unrelated to the physical or mental impairments which substantially limit one or more of Sheets's major life activities. Even if the subpoena were so limited, Defendants have not established why they need "all documents," including but not limited to bills for services and statements showing whether bills were paid and by whom. As such, the Court finds that Plaintiffs have established good cause for a protective order relating to the production of any documents unrelated to whether Sheets has the physical impairments specifically alleged in the Second Amended Complaint, which include Ehlers-Danlos syndrome, Postural Orthostatic Tachycardia Syndrome and Fibromyalgia,[1] and to Sheets's use of an emotional support animal.

**B.      Documents related to emotional distress**

Under the FHA, a plaintiff may recover damages for emotional distress and embarrassment. *Banai v. Sec'y, U.S. Dep't of Hous. & Urban Dev. on Behalf of Times*, 102 F.3d 1203, 1207 (11th Cir. 1997). Given that Plaintiffs have alleged that Sheets suffered emotional distress and embarrassment, the Court finds that Defendants are entitled to conduct discovery relevant to those claims. Even so, Defendants are "not automatically entitled to full disclosure [of] all [of] [Sheets's] medical records and unrestricted as to time or circumstance simply because some level of emotional distress is claimed." *Cameron v. Supermedia*, LLC,

---

[1] The Court recognizes that Plaintiffs also allege that Sheets suffers from "other physical impairments." (Dkt. 32 ¶ 22.) Nonetheless, this does not give Defendants unmitigated access to her entire medical history in order to speculate what those other impairments may be. It is Plaintiffs' burden to establish that Sheets is handicapped under the FHA, and if Plaintiffs rely on information not timely disclosed to Defendants, Defendants may raise an argument to exclude such evidence at an appropriate time.

No. 4:15CV315-MW/CAS, 2016 WL 1572952, at *3 (N.D. Fla. Apr. 19, 2016) (internal quotations omitted). Thus, the subpoena, as currently drafted, is overly broad. Defendants may narrow their request to seek records relating to any emotional distress that Sheets reported from 2013, when Sheets first requested permission to maintain the invisible fence (*see* Dkt. 32 ¶ 68), to the present. Plaintiffs have otherwise established good cause for a protective order.

### C.    Confidentiality of medical records

Plaintiffs assert that the records requested from Sarasota Neurology, P.A. are confidential per Sections 395.3025 and 456.057 of the Florida Statutes and that Sheets does not waive her right to privacy as to any medical records. Section 395.3025 does provide that "[p]atient records are confidential and must not be disclosed without the consent of the patient or his or her legal representative;" however, it further provides that "appropriate disclosure may be made without such consent . . . [i]n any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice by the party seeking such records to the patient or his or her legal representative." § 395.3025(4)(d), Fla. Stat. Section 456.057 includes a similar exception. *See* § 456.057(7)(a)(3), Fla. Stat. Accordingly, the confidentiality of the medical records under the Florida Statutes does not compel this Court to quash the subpoena.

Plaintiffs also assert that the documents are privileged, but do not assert a basis for the privilege. (*See* Dkt. 51 ¶ 26.) Under federal law, as well as the common law, there is no doctor-patient privilege. *United States v. Lindstrom*, 698 F.2d 1154, 1167 n.9 (11th Cir. 1983). Therefore, Plaintiffs' blanket assertion of a privilege also does not support an order quashing the subpoena.

Alternatively, Plaintiffs request a protective order requesting that any medical records produced in the course of discovery not be disclosed to any third party and be used only as evidence in this case.  Given the sensitive nature of medical records, the Court will grant Plaintiffs' motion for a protective order to the extent that any medical records produced in response to the subpoena should not be disclosed to third parties who are not involved in this litigation, unless good cause is shown.  If the parties seek to file a document with the court under seal, they must first file a motion requesting such relief, in accordance with Middle District of Florida Local Rule 1.09.  The parties are, of course, also free to enter into a confidentiality agreement regulating the use and disclosure of all documents produced in this case.

## II.      Subpoenas to Former Employers

The subpoenas to Oasis Outsourcing and Regions Bank seek production of "all documents regarding Kirsten Sheets," including all employment records, W-2 forms, payroll records, pre-employment applications, ledger entries, attendance slips, papers on sick leave or absences, applications for health insurance, worker's compensation records, doctor's notes or releases to return to work, evaluations, performance reports, written reprimands, letters of recommendation, and the complete personnel file.  (Dkt. 51 at 15, 19.)

Plaintiffs state that Sheets was employed with Regions Bank from January 2007 to March 2012 and, as such, the request to Regions Bank is overbroad and too remote in time. They further note that there are no factual allegations in the pleadings related to Regions Bank. As to Oasis Outsourcing, Plaintiffs state that Sheets was employed from September 2013 to October 2014.  Plaintiffs note that the only allegation related to Oasis Outsourcing is in

paragraph 203(p) of the Second Amended Complaint, which contends that Argus and Benford contacted Oasis Outsourcing and tried to have Sheets fired. Therefore, Plaintiffs also assert that the subpoena to Oasis Outsourcing is overbroad and seeks production of irrelevant information.

Defendants argue that the employment records are discoverable because they bear upon a defense that Sheets was terminated for reasons other than alleged. They also contend that the records are relevant to Sheets's emotional distress claims and that her prior employers' personnel files contain relevant information in this regard.

The Court agrees with Plaintiffs that the subpoenas, seeking all documents related to Sheets, are overbroad and seek irrelevant information. Sheets was last employed with Regions Bank over a year prior to when Sheets first requested permission to maintain the invisible fence. Additionally, there are no allegations in the case related to Sheets's employment with Regions Bank. Although Defendants believe that Regions Bank may have records related to Sheets's emotional condition, this contention is too speculative and is outweighed by Sheets's interest in keeping the files confidential, as well as the burden imposed on Regions Bank to respond to the subpoena. Accordingly, the motion for protective order is granted as to Regions Bank.

Although the subpoena to Oasis Outsourcing is also overbroad, Defendants are entitled to conduct discovery related to Plaintiffs' allegation that Argus and Benford contacted Oasis Outsourcing and tried to have Sheets fired. Notably, though, Plaintiffs do not allege that Sheets was actually fired and, instead, allege that Sheets is on medical leave. Therefore, Defendants' argument that they are entitled to Sheets's personnel records to determine other reasons for Sheets's termination is without merit. Defendants may request documents specifically related

to whether Oasis Outsourcing had any contact from Argus or Benford related to Sheets's employment.  Defendants may also request documents related to Sheets's medical leave.  As with Regions Bank, Defendants request for documents related to Sheets's emotional condition is too speculative.  Therefore, except as specified above, the motion for protective order is granted as to Oasis Outsourcing.

**III.    Subpoenas to Treating Physicians or Medical Providers on Plaintiffs' Amended Expert Witness Disclosure**

On March 28, 2016, Plaintiffs served their Amended Rule 26(a)(2)(C) Disclosure of Experts, identifying nine treating physicians or other treating medical providers whom Plaintiffs may use at trial to present expert testimony.  (Dkt. 60-1.)  Plaintiffs noted that the experts were not retained or specifically employed to provide expert testimony in this case, as such, the experts were not required to prepare written reports pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).  Instead, in accordance with Federal Rule of Civil Procedure 26(a)(2)(C), Plaintiffs disclosed the subject matter on which the witnesses are expected to present evidence under Federal Rule of Evidence 702, 703, or 705 and a summary of the facts and opinions to which the witnesses are expected to testify.  For each expert, Plaintiffs stated that the expert is expected to offer testimony regarding Sheets's "medical conditions," and then described the specific conditions about which the expert would testify.  These include physical conditions, such as Ehlers-Danlos syndrome, as well as mental conditions, such as anxiety and depression.

Defendants served subpoenas on eight of the nine disclosed experts:  (1) Katherine Baum, Ph.D., (2) Richard McDonough, M.D., (3) Joseph Sassano, D.O., (4) Mary S. Aubin, LMHC, (5) Mary McDermott, LMHC, (6) John Meyer, M.D., (7) Maulik Shah, M.D., and (8)

Golder Wilson, M.D.  Each subpoena requests that the expert produce "all documents regarding Kirsten Sheets," including but not limited to the same eleven categories of documents as in the subpoena to Sarasota Neurology, P.A., which the Court addressed above.

Plaintiffs contend that the requests are overbroad and seek irrelevant information. Plaintiffs also claim that the documents are confidential and that Defendants should first attempt to obtain evidence regarding any emotional distress claim from Plaintiffs rather than through the use of subpoenas to non-parties.

Defendants assert that the requested documents are relevant to Plaintiffs' allegations and damages, including Sheets's claimed emotional distress and embarrassment.  Defendants state that the information sought by the subpoenas was included in Defendant Sorrento Villas, Section 5, Association, Inc.'s Request for Production of Documents to Plaintiffs, served on December 31, 2015, but that Plaintiffs objected to the requests and did not provide responsive documents.

As discussed above regarding the Sarasota Neurology, P.A. subpoena, the requests for "all documents" are overbroad and seek irrelevant documents.  Nonetheless, because Plaintiffs have identified these eight medical providers as expert witnesses, Defendants are entitled to conduct discovery related to the scope of their expert testimony.  For each expert witness, Defendants may request medical records, notes, and reports related to the medical conditions about which the expert witness is expected to testify, per Plaintiffs' Amended Rule 26(a)(2)(C) Disclosure of Experts.  Defendants may also request a copy of the expert's curriculum vitae. As set forth previously, all medical records produced in response to these subpoenas should not

be disclosed to third parties who are not involved in this litigation, unless good cause is shown. Therefore, except as specified above, the motion for protective order is granted.

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Protective Order and/or to Quash Subpoenas filed on March 9, 2016 (Dkt. 51) and Motion for Protective Order and/or to Quash Subpoenas filed on April 1, 2016 (Dkt. 56) are **GRANTED** in part and **DENIED** in part.

**DONE** and **ORDERED** in Tampa, Florida on May 9, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record