UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRSTEN SHEETS, JASON KALAGHER
and JANSON MURPHY,

    Plaintiffs,

v.                                                 Case No: 8:15-cv-1674-T-30JSS

SORRENTO VILLAS, SECTION 5,
ASSOCIATION, INC., ARGUS
PROPERTY MANAGEMENT, INC.,
LINDA BENFORD, JAMES TOMPKINS,
BOB BRUNO, NANCY HUBBARD,
CLAUDIA DORNBACK, HARLAN BUD
FRIDDLE, JACK MCCOPPEN and
LOYOLA SIEP,

    Defendants.
_____/

**ORDER ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENAS AND PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

THIS MATTER is before the Court on (1) Plaintiffs' Motion for Protective Order and/or to Quash Subpoenas served by Defendants Argus Property Management, Inc. ("Argus") and Linda Benford ("Benford" and, together with Argus, "Defendants") ("Motion for Protective Order") (Dkt. 66), and (2) Plaintiffs' Motion to Compel Discovery from Argus ("Motion to Compel") (Dkt. 63). Defendants opposed the Motions (Dkts. 67 and 69) and filed supplemental responses and objections to the requests for production at issue in the Motion to Compel (Dkt. 67 Ex. A). On May 24, 2016, the Court held a hearing on the Motions, at which Plaintiffs withdrew the Motion to Compel except as to four requests for production. For the reasons stated below and at the hearing, (1) the Motion for Protective Order is granted and (2) the Motion to Compel, as to Plaintiffs' four remaining requests for production, is denied.

**BACKGROUND**

Plaintiffs Kirsten Sheets ("Sheets"), Jason Kalagher ("Kalagher"), and Janson Murphy ("Murphy") allege that Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"). (Dkt. 32 ¶ 2.) Sheets and Kalagher are married and Murphy is Sheets's minor son. (Dkt. 32 ¶¶ 5, 6.) Plaintiffs reside in a condominium unit, which Sheets owns. (Dkt. 32 ¶ 9.)

Defendants are the condominium association of which Plaintiffs are members ("Association"), the Association's directors, Argus, which is the Association's property management company, and Benford, Argus's employee who was the Association's property manager. (Dkt. 32 ¶¶ 10–12.)

Sheets alleges that she suffers a handicap within the scope of the FHA and has an emotional support animal to assist her. (Dkt. 32 ¶¶ 22, 23.) Sheets alleges that she is often physically unable to walk and, therefore, installed an underground invisible fence within the common elements of the condominium adjacent to her unit to dispense with the need to use a leash. (Dkt. 32 ¶¶ 25, 26.)

Plaintiffs allege that, after Plaintiffs installed the invisible fence, Defendants took actions in violation of the FHA. Specifically, Sheets alleges that Defendants violated the FHA by (1) failing to reasonably accommodate her need for an invisible fence to constrain her emotional support dog (Dkt. 32 Counts I and V) and (2) failing to make modifications to the condominium property to accommodate her need for an invisible fence. (Dkt. 32 Counts II and VI.) Plaintiffs allege that Defendants violated the FHA by (1) retaliating against Plaintiffs' exercising their rights under the FHA (Dkt. 32 Counts III and VII), and (2) discriminating against Plaintiffs based on their familial status. (Dkt. 32 Counts IV and VIII.)

**APPLICABLE STANDARDS**

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1306 (11th Cir. 2011).

Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b). Courts consider the following factors when evaluating whether requested discovery is proportional to the needs of the case: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Requests for production of documents must be within the scope of discovery. Fed. R. Civ. P. 34(a).

A party has standing to move to quash a subpoena directed at a non-party if the party alleges a "personal right or privilege" with respect to the subpoenas. *Auto-Owners Ins. Co. v. Se. Floating Docks*, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Courts may issue protective orders for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). To show "good cause" to justify the court issuing a protective order, a movant must demonstrate "a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig*., 820 F.2d 352, 356 (11th Cir. 1987). Further, a court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a party to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).

## ANALYSIS

**A.     Motion for Protective Order**

In the Motion for Protective Order, Plaintiffs request (1) a protective order or an order quashing subpoenas Defendants served on the non-party treating physicians and medical providers Plaintiffs disclosed as expert witnesses (Dkt. 60-1) and (2) their fees and costs incurred in bringing the Motion for Protective Order.  (Dkt. 66.)

Plaintiffs do not object to Plaintiffs' experts being deposed, but object to the breadth of documents subpoenaed.  (Dkt. 66.)  The subpoenas request the production of "all documents regarding Kirsten Sheets, including but not limited to" eleven categories of documents, which include, *inter alia*, all of Sheets's medical records, all "data pertaining to the diagnosis, treatment, and care of [Sheets]," all patient information forms, any bills for services and statements indicating the total amount of the bill, all x-rays, "every written piece of paper included within the patient's chart," and any MRI reports.  (Dkts. 66-1–66-8 at 7.)  The subpoena further states that "[a]ll records requested should be all inclusive and should in no way be limited to one incident."  (Dkts. 66-1–66-8 at 7.)

At the hearing, Plaintiffs requested that Defendants' requests for production from Plaintiffs' experts be restricted to the scope set forth in this Court's prior ruling (Dkt. 68) on Plaintiffs' prior motions for protective orders and/or to quash subpoenas Defendants served on the records custodians for Plaintiffs' experts.  (Dkts. 51 and 56.)  Defendants agreed, but argued that medical records pertaining to Sheets's diagnoses as to emotional conditions prior to 2013 are relevant to Defendants' defense of Plaintiffs' allegations of emotional distress due to Defendants' actions.

For the reasons stated below, Plaintiffs' Motion for Protective Order (Dkt. 66) is granted. The documents subpoenaed from Plaintiffs' experts are overly broad because they contain no limit

in timeframe and encompass records unrelated to Sheets's physical or mental impairments. Plaintiffs' Motion for Protective Order is granted, however, without prejudice to Defendants to serve new subpoenas on Plaintiffs' experts related to (1) the scope of the experts' testimony, (2) whether Sheets has the physical impairments alleged in the Second Amended Complaint (Dkt. 32 ¶ 22), and (3) emotional distress Sheets reported from 2013 to the present.

All medical records produced in response to these subpoenas should not be disclosed to third parties who are not involved in this litigation, unless good cause is shown. If the parties seek to file a document with the court under seal, they must first file a motion requesting such relief, in accordance with Middle District of Florida Local Rule 1.09. The parties are, of course, also free to enter into a confidentiality agreement regulating the use and disclosure of all documents produced in this case.

### 1. Documents related to the scope of the experts' testimony

Because Plaintiffs have identified the subpoenaed treating physicians and medical providers as expert witnesses, Defendants are entitled to conduct discovery related to the scope of their expert testimony. For each expert witness, Defendants may request medical records, notes, and reports related to the medical conditions about which the expert witness is expected to testify, given Plaintiffs' Amended Rule 26(a)(2)(C) Disclosure of Experts (Dkt. 60-1). Defendants may also request a copy of the expert's curriculum vitae.

### 2. Documents related to Sheets's physical impairments

To prevail on her reasonable accommodation claim under the FHA, Sheets must establish that (1) she is disabled or handicapped within the meaning of the FHA, (2) she requested a reasonable accommodation, (3) such accommodation was necessary to afford her an opportunity to use and enjoy her dwelling, and (4) the Defendants refused to make the requested accommodation. *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467

(11th Cir. 2009). A person is considered handicapped under the FHA if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities, [has] a record of having such an impairment, or [is] regarded as having such an impairment." 42 U.S.C. § 3602(h).

The document requests in the subpoenas are overbroad and seek information not relevant to the parties' claims and defenses because they are not limited in timeframe and encompass records unrelated to the physical or mental impairments that substantially limit one or more of Sheets's major life activities. As such, Plaintiffs have established good cause for a protective order relating to the production of any documents unrelated to whether Sheets has the physical impairments specifically alleged in the Second Amended Complaint (Dkt. 32 ¶ 22) or to Sheets's use of an emotional support animal.

### 3. Documents related to Plaintiffs' allegations of emotional distress

Under the FHA, a plaintiff may recover damages for emotional distress and embarrassment. *Banai v. Sec'y, U.S. Dep't of Hous. & Urban Dev. on Behalf of Times*, 102 F.3d 1203, 1207 (11th Cir. 1997). Given that Plaintiffs have alleged that they suffered emotional distress and embarrassment, Defendants are entitled to conduct discovery relevant to those claims, but Defendants are "not automatically entitled to full disclosure [of] all [of] [Sheets's] medical records and unrestricted as to time or circumstance simply because some level of emotional distress is claimed." *Cameron v. Supermedia*, LLC, No. 4:15CV315-MW/CAS, 2016 WL 1572952, at *3 (N.D. Fla. Apr. 19, 2016) (internal quotations omitted). The subpoenas, as currently drafted, are overly broad because they are not limited in timeframe. The Court rejects Defendants' argument that medical records pertaining to Plaintiffs' diagnoses as to emotional conditions prior to 2013 are relevant to Defendants' defense of Plaintiffs' allegations of emotional distress and embarrassment due to Defendants' actions. Defendants may narrow their request to

seek records relating to any emotional distress that Sheets reported from 2013, when Sheets first requested permission to maintain the invisible fence (*see* Dkt. 32 ¶ 68), to the present.  Plaintiffs have otherwise established good cause for a protective order.

**B.      Motion to Compel**

In the Motion to Compel, Plaintiffs seek an order (1) compelling Argus to serve proper responses and produce responsive documents to over 100 requests for production and (2) awarding Plaintiffs the fees and costs incurred in bringing the Motion to Compel. (Dkt. 63.)  In Argus's response to the Motion to Compel, Argus informed the Court that, after Plaintiffs filed the Motion to Compel, Plaintiffs inspected and copied Argus's documents at Argus's corporate facility and therefore Plaintiffs were given access to the documents requested. (Dkt. 67.)  Argus attached a supplemental response to the production requests, which updated its responses and objections, including identifying the production requests to which responsive documents have been produced or to which there are no responsive documents. (Dkt. 67 Ex. A.)  At the hearing, Plaintiffs withdrew the Motion to Compel with the exception of four requests for production ("Requests") numbers 3, 10, 13, 52, and 53. (*See* Dkt. 63 Ex. A.)

Pursuant to Request 3, Plaintiffs seek production of the minutes of the Association's directors' meetings.  At the hearing, Plaintiffs argued that Benford testified during her deposition that she maintained a binder containing the Association's directors' meeting minutes, but that Argus has not produced the binder.  Argus responded that it had produced all of the Association's directors' meeting minutes.  The Motion to Compel as to Request 3 is denied because Argus has stated that it has produced all unprivileged, responsive documents as to Request 3.  Plaintiffs, however, may serve a specific request seeking production of Benford's binder.

Pursuant to Request 10, Plaintiffs seek emails and text messages between Argus, one of the Association's directors, and an Association member who lives next to Plaintiffs who Plaintiffs

alleged, at the hearing, is the "eyes and ears" of the Association. Argus argued that the Request was overbroad, unduly burdensome, not relevant to any claims or defenses, and not proportional to the needs of the case. The Motion to Compel as to Request 10 is denied because the timeframe of emails and text messages in the request is overbroad and seeks production of documents that are not relevant to any party's claim or defenses.

Pursuant to Requests 13, 52, and 53, Plaintiffs seek the following emails: between Sheets, the Association, its directors, and/or Argus (Request 13); between the Association and Argus concerning Sheets's condominium unit or her family members (Request 52); between the Association and Argus concerning Sheets's brother, his condominium unit, and his tenants (Request 53). At the hearing, Plaintiffs argued that although Argus had produced emails, Plaintiffs have not yet been able to compare these produced emails against the emails in Plaintiffs' possession to determine whether any emails were not produced. Argus responded that it produced all responsive emails. Because Argus stated that it has produced all unprivileged, responsive documents to Requests 13, 52, and 53, the Motion to Compel as to Requests 13, 52, and 53 is denied without prejudice. Argus shall supplement its production should it determine any unprivileged, responsive emails were not produced.

Accordingly, it is

**ORDERED**:

1.Plaintiffs' Motion for Protective Order (Dkt. 66) is **GRANTED** without prejudice to Defendants to serve new subpoenas on Plaintiffs' experts related to (1) the scope of the experts' testimony, (2) whether Sheets has the physical impairments alleged in the Second Amended Complaint, and (3) Plaintiffs' allegations of emotional distress from 2013 to the present.

      2.      Plaintiffs' Motion to Compel as to Request 3 (Dkt. 63) is **DENIED** without prejudice. Plaintiffs may specifically request production of the binder of Defendant Linda Benford's Association director meeting minutes.

      3.      Plaintiffs' Motion to Compel as to Request 10 (Dkt. 63) is **DENIED**.

      4.      Plaintiffs' Motion to Compel as to Requests 13, 52, and 53 (Dkt. 63) are **DENIED** without prejudice.

      5.      Plaintiffs' request for fees and costs incurred in bringing the Motions (Dkts. 63 and 66) is **DENIED**.

      **DONE** and **ORDERED** in Tampa, Florida on May 26, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record