UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRSTEN SHEETS, JASON KALAGHER
and JANSON MURPHY,

     Plaintiffs,

v.                                                                                  Case No: 8:15-cv-1674-T-30JSS

SORRENTO VILLAS, SECTION 5,
ASSOCIATION, INC., ARGUS
PROPERTY MANAGEMENT, INC.,
LINDA BENFORD, JAMES TOMPKINS,
BOB BRUNO, NANCY HUBBARD,
CLAUDIA DORNBACK, HARLAN BUD
FRIDDLE, JACK MCCOPPEN and
LOYOLA SIEP,

     Defendants.

_____/

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion for Protective Order and/or to

Quash Subpoenas ("Plaintiffs' Motion for Protective Order") (Dkt. 78), Defendants' Motion for

Protective Order Regarding Plaintiffs' Financial Discovery and Personal Financial Information

from Deposition ("Directors' Motion for Protective Order") (Dkt. 80), Plaintiffs' Motion to

Compel Discovery from the Sorrento Defendants ("Plaintiffs' Motion to Compel") (Dkt. 86), and

Defendant Linda Benford's Motion for Protective Order Regarding Plaintiffs' Financial Discovery

and Personal Financial Information from Deposition ("Benford's Motion for Protective Order")

(Dkt. 88).  For the reasons stated below, the Motions are granted in part and denied in part.

## BACKGROUND

Plaintiffs Kirsten Sheets ("Sheets"), Jason Kalagher ("Kalagher"), and Janson Murphy

("Murphy") allege that Defendants have violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

("FHA").  (Dkt. 32 ¶ 2.)  Sheets and Kalagher are married and Murphy is Sheets's son.  (Dkt. 32 ¶¶ 5, 6.)  Plaintiffs reside in a condominium unit, which Sheets owns.  (Dkt. 32 ¶ 9.)

Defendants are the condominium association of which Plaintiffs are members ("Association"), the Association's directors Defendants James Tompkins, Bob Bruno, Nancy Hubbard, Claudia Dornback, Harlan (Bud) Friddle, Jack McCoppen, and Loyola Siep ("Directors"), Argus Property Management, Inc. ("Argus"), which is the Association's property management company, and Linda Benford, Argus's employee who was the Association's property manager ("Benford").  (Dkt. 32 ¶¶ 10–12.)

Sheets alleges that she suffers a handicap within the scope of the FHA and has an emotional support animal to assist her.  (Dkt. 32 ¶¶ 22, 23.)  Sheets alleges that she is often physically unable to walk and, therefore, installed an underground invisible fence within the common elements of the condominium adjacent to her unit to dispense with the need of using a leash.  (Dkt. 32 ¶¶ 25, 26.)

Plaintiffs allege that, after Plaintiffs installed the invisible fence, Defendants took actions in violation of the FHA.  Specifically, Sheets alleges that Defendants violated the FHA by (1) failing to reasonably accommodate her need for an invisible fence to constrain her emotional support dog (Dkt. 32 Counts I and V) and (2) failing to make modifications to the condominium property to accommodate her need for an invisible fence.  (Dkt. 32 Counts II and VI.)  Plaintiffs allege that Defendants violated the FHA by (1) retaliating against Plaintiffs' exercising their rights under the FHA (Dkt. 32 Counts III and VII), and (2) discriminating against Plaintiffs based on their familial status.  (Dkt. 32 Counts IV and VIII.)  Plaintiffs assert specific claims that the Directors and Benford committed or contributed to violations of the FHA.  (Dkt. 32 ¶¶ 44–50, 77–83, 105–109, 121–127, 156, 184, 205, and 217.)  Plaintiffs seek damages, including punitive

damages, against all Defendants in Counts I–VIII of the Second Amended Complaint. (Dkt. 32).

Defendants oppose and deny Plaintiffs' claims. (Dkts. 33, 34.)

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901

F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery.

*Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1306 (11th Cir. 2011).

Through discovery, parties may obtain materials that are within the scope of discovery,

meaning they are nonprivileged, relevant to any party's claim or defense, and "proportional to the

needs of the case." Fed. R. Civ. P. 26(b). Courts consider the following factors when evaluating

whether requested discovery is proportional to the needs of the case: (1) "the importance of the

issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to

relevant information," (4) "the parties' resources," (5) "the importance of the discovery in

resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs

its likely benefit." *Id.* Requests for production of documents must be within the scope of

discovery. Fed. R. Civ. P. 34(a).

A party has standing to move to quash a subpoena directed at a non-party if the party alleges

a "personal right or privilege" with respect to the subpoenas. *Auto-Owners Ins. Co. v. Se. Floating*

*Docks*, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005) (quoting *Brown v. Braddick*, 595 F.2d 961, 967

(5th Cir. 1979)). Courts may issue protective orders for "good cause" to "protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P.

26(c)(1). To show "good cause" to justify the court issuing a protective order, a movant must

demonstrate "a sound basis or legitimate need to take judicial action." *In re Alexander Grant &*

*Co. Litig*., 820 F.2d 352, 356 (11th Cir. 1987). Further, a court must quash or modify a subpoena

that "requires disclosure of privileged or other protected matter" or "subjects a party to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).

## ANALYSIS

### A.      Plaintiffs' Motion for Protective Order

In Plaintiffs' Motion for Protective Order, Plaintiffs request (1) a protective order or an order quashing subpoenas directed to the records custodians for Pine View School and Brandon Veterinary Clinic and (2) their fees and costs incurred in bringing Plaintiffs' Motion for Protective Order. (Dkt. 78.)  The subpoena to Pine View School requests the following:

> Any and all school records, including, but not limited to:  records showing grades and honors received, attendance records; any evaluations, performance reports, written reprimands, letters of recommendation or other materials reflecting scholastic performance; a copy of the complete file of Janson Murphy.

(Dkt. 78-1.)  According to Plaintiffs, the subpoena for Murphy's school records is overly broad and seeks confidential, irrelevant information. (Dkt. 78.)

As stated at length above, the parties may obtain discovery of information and materials that are nonprivileged, relevant to any party's claim or defense, and "proportional to the needs of the case." Fed. R. Civ. P. 26(b).  In the Second Amended Complaint, Plaintiffs assert allegations related to Murphy's FHA claims.  Specifically, among other allegations, Plaintiffs claim: Murphy's car was vandalized while parked in the Defendants' community; Defendants adopted a rule to prohibit Murphy from parking on the street near his family's unit within the community; and Defendants adopted a rule prohibiting Murphy from playing in locations designated as common elements within the community. (Dkt. 32 ¶¶ 102, 114–120.)  Defendants deny Plaintiffs' claims. (Dkts. 33, 34.)

Defendants' subpoena for Murphy's school records seeks disclosure of years of information and documents that are wholly unrelated to Plaintiffs' claims and Defendants'

defenses in this case.  Defendants have failed to file a response showing any relevance to the issues

in dispute or explaining why the discovery sought is proportional to the needs of the case.  The

subpoena seeking "[a]ny and all school records" appears to be an impermissible, unwarranted

fishing expedition.  *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) ("the discovery rules do

not permit the [parties] to go on a fishing expedition").  Plaintiffs have shown good cause and,

accordingly, Plaintiffs' Motion as to the subpoena to Pine View School is granted.

Plaintiffs also seek entry of a protective order and/or an order quashing Defendants'

subpoena to Brandon Veterinary Clinic.  In the subpoena to Brandon Veterinary Clinic, Defendants

request the following:

> All records of treatment provided to any dogs or other animals
> belonging to Kirsten Sheets, Jason Kalagher or Janson Murphy, 540
> Villa Park Drive, Nokomis, FL  34275, including billing records.

(Dkt. 78-2.)  According to Plaintiffs, the subpoena to Brandon Veterinary Clinic is overly broad

and seeks irrelevant information concerning other animals Plaintiffs may have owned.  Plaintiffs

further contend that any care or training received by the emotional support dog at issue in this case

is not relevant to Plaintiffs' claims or Defendants' defenses.  (Dkt. 78.)

A central issue in this case is Sheets's need for an emotional support dog and Plaintiffs'

request to install an underground invisible fence within the common elements of the condominium

adjacent to their unit to contain and limit the movement of Plaintiffs' dog.  (Dkt. 32.)  Information

related to the emotional support dog is relevant to Plaintiffs' claims and Defendants' defenses.

The information and documents related to the emotional support dog at issue in the Second

Amended Complaint are also proportional to the needs of the case.  However, Defendants' request

for "[a]ll records of treatment provided to *any dogs or other animals*" belonging to Plaintiffs is

overly broad and bears no relation to the matters at issue here.  Moreover, given their lack of

response, Defendants have failed to provide information showing the relevance of information

related to Plaintiffs' other animals to the issues in dispute or explaining why the discovery sought is proportional to the needs of the case.  Accordingly, Plaintiffs' Motion for Protective Order regarding the subpoena directed to Brandon Veterinary Clinic is granted in part as it relates to animals other than the emotional support dog at issue in this case.

**B.      Directors' Motion for Protective Order, Plaintiffs' Motion to Compel, and Benford's Motion for Protective Order**

In the Directors' Motion for Protective Order (Dkt. 80) and Benford's Motion for Protective Order (Dkt. 88), Defendants request a protective order or an order quashing Plaintiffs' requests for production of personal financial information of the Directors (Dkt. 80) and Benford (Dkt. 88) in discovery and depositions.  Directors and Benford contend that their personal financial information is being sought only to annoy, embarrass, oppress or unduly burden the Defendants and that no claims have been lodged against the individual Defendants in their individual capacities.   (Dkts. 80, 88.)

Plaintiffs' Motion to Compel seeks production of the financially-related information and documents from each of the Directors.  (Dkts. 80-1, 80-2, 80-3, 80-4, 80-5, 80-6, 86, 88-1.)  In the Second Amended Complaint, Defendants have been sued for their actions as individuals and as directors of the Association. (Dkts. 81, 86, 32 ¶¶ 44–50, 77–83, 105–109, 121–127, 156, 184, 205, 217.)  Plaintiffs maintain that the financially-related information is relevant to their claims for punitive damages against the Directors and Benford.  (Dkts. 81, 86.)

Punitive damages are available under the FHA.  42 U.S.C. § 3613(c)(1) (stating, in a civil action, "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages"); *see also Banai v. Sec'y, U.S. Dept. of Hous. and Urban Dev.*, 102 F.3d 1203, n.4 (11th Cir. 1997) (punitive damages are available for civil actions tried in district court alleging violations of the FHA); *Sabal Palm Condo.*

*of Pine Island Ridge Ass'n., Inc. v. Fischer*, No. 12-60691-Civ, 2014 WL 988767, * 23 (S.D. Fla. Mar. 13, 2014) (same); *Hous. Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condo. Ass'n., Inc.*, 510 F. Supp. 2d 1003 (S.D. Fla. 2007) (same).  Further, plaintiffs allegedly aggrieved by violations of the FHA may seek damages, including punitive damages, from individual defendants who have personally committed or contributed to a violation of the FHA. *Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n., Inc.*, 141 F. Supp. 3d 1321, 1325–1326 (S.D. Fla. 2015); *Sabal Palm Condos of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014); *Copeman v. Briel*, No. 1:11-cv-75-SPM-GRJ, 2011 WL 2292113, *5 (N.D. Fla. May 6, 2011); *see also Meyer v. Holley*, 537 U.S. 280 (2003) (discussing vicarious liability for FHA violations).

Plaintiffs seek punitive damages against the Directors and Benford (Dkt. 32 ¶¶ 44–50, 77–83, 105–109, 121–127, 132, 156, 158, 160, 184, 186, 188, 202–203, 205, 207, 215, 217, 220) for alleged FHA violations and request production of these Defendants' financially-related information in support of their claims.  Plaintiffs maintain that the Directors and Benford "personally committed or contributed to the Fair Housing violations" or knowingly engaged in conduct violating the FHA, as alleged in the Second Amended Complaint.  (Dkt. 32 ¶¶ 44–50, 77–83, 105–109, 121–127, 156, 184, 205, 217.)  Given the allegations in the Second Amended Complaint and applicable caselaw, Plaintiffs' request for production of the Directors' and Benford's financial net-worth information is relevant to Plaintiffs' claims.  *See Hite v. Hill Dermaceuticals, Inc.*, No. 8:12-CV-2277-T-33AEP, 2013 WL 6799334 (M.D. Fla. Dec. 23, 2013) (financial net worth discovery relevant to punitive damages claim); *E.E.O.C. v. DiMare Ruskin, Inc.*, Co. 2:11-CV-115-FTM-36SPC, 2011 WL 3715067 (M.D. Fla. Aug. 24, 2011) (same);

*Soliday v. 7-Eleven, Inc.*, No. 2:09-CV-807-FTM-29SPC, 2010 WL 4537903 (M.D. Fla. Nov. 3, 2010) (same).

Plaintiffs' broad requests for production of the Directors' and Benford's financial net-worth information in their entirety are not, however, proportional to the needs of the case. Fed. R. Civ. P. 26(b). "Only current financial documents are relevant to a claim for punitive damages." *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 668 (S.D. Fla. 2005); see *Hite*, 2013 WL 6799334, *6 (internal quotations and citations omitted); *Soliday*, 2010 WL 4537903, *3 (limiting discoverable financial records to a "reasonable" time period).

Specifically, Plaintiffs' Requests for Production in Requests 2–5, 11, 13, 15–17, 19–23, 25, 27–28, 30, 32, and 34 have not been shown to be proportional to the needs of this case at this time. These requests exceed the information needed to determine the Directors' and Benford's current net worth because the remaining requests (Request Nos. 1, 6, 7, 10, 12, 14, 18, 24, 26, 29, 31, and 33) are sufficient to determine Defendants' current net worth.[1] Therefore, Requests 2–5, 11, 13, 15–17, 19–23, 25, 27–28, 30, 32, and 34 are not important in relation to Plaintiffs' punitive damages claims and the burden of their discovery outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b). Accordingly, the Directors' Motion for Protective Order (Dkt. 80) and Benford's Motion for Protective Order (Dkt. 88) are granted in part as to those requests.

As to the remaining requests—Plaintiffs' Requests for Production in Requests 1, 6, 7, 10, 12, 14, 18, 24, 26, 29, 31, and 33 and Plaintiffs' requests for information concerning Defendants' "net worth" during depositions—these requests are relevant and proportional to the needs of the case because, unlike the other requests, they are important to the measure and resolution of Plaintiffs' punitive damages claims and are not overly broad or burdensome. *See* Fed. R. Civ. P.

---

[1] Plaintiffs' Request for Production Nos. 8 and 9 seek information unrelated to Defendants' financial net-worth and are not at issue here.

26(b).  Defendants have made no showing to the contrary.  Therefore, the Directors' Motion for Protective Order (Dkt. 80) and Benford's Motion for Protective Order (Dkt. 88) are denied in this regard.  The time period for this permitted financial, net-worth discovery is limited to the years 2015 to the present.

Accordingly, it is

**ORDERED**:

1.      Plaintiffs' Motion for Protective Order and/or to Quash Subpoenas (Dkt. 78) is granted in part and denied in part.  Plaintiffs' Motion is granted as to the subpoena directed to Pine View School.  Plaintiffs' Motion is also granted in part as to the subpoena directed to Brandon Veterinary Clinic as it relates to animals other than the emotional support dog at issue in this case. Plaintiffs' Motion is otherwise denied and Plaintiffs' objections to Defendants' subpoena to Brandon Veterinary Clinic for records related to the emotional support dog at issue in this case are overruled.  Plaintiffs' Motion for fees and costs is denied.

2.      The Directors' Motion for Protective Order Regarding Plaintiffs' Financial Discovery and Personal Financial Information from Deposition (Dkt. 80), Plaintiffs' Motion to Compel Discovery from the Sorrento Defendants (Dkt. 86), and Benford's Motion for Protective Order Regarding Plaintiffs' Financial Discovery and Personal Financial Information from Deposition (Dkt. 88), are granted in part and denied in part.  Directors and Benford are granted protection from Request Nos. 2–5, 11, 13, 15–17, 19–23, 25, 27–28, 30, 32, and 34 of Plaintiffs' Requests for Production of Documents.  The Directors' Motion for Protective Order, Plaintiffs'

Motion to Compel, and Benford's Motion for Protective Order are otherwise denied.

**DONE** and **ORDERED** in Tampa, Florida on July 26, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record