UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIRSTEN SHEETS, JASON KALAGHER
and JANSON MURPHY,

    Plaintiffs,

v.                                            Case No: 8:15-cv-1674-T-30JSS

SORRENTO VILLAS, SECTION 5,
ASSOCIATION, INC., et al.,

    Defendants.
_____

## ORDER

THIS CAUSE comes before the Court upon Defendant Linda Benford's Motion for Summary Judgment (Dkt. 109), Plaintiffs' Response in Opposition (Dkt. 121), and Defendant Linda Benford's Reply (Dkt. 128). The Court, having reviewed the motion, response, reply, record evidence, and being otherwise advised in the premises, concludes that the motion should be granted and final judgment entered in Benford's favor.

## BACKGROUND

Plaintiffs Kirsten Sheets, Jason Kalagher, and Janson Murphy allege that Defendants violated the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("FHA"). Sheets and Kalagher are married and Murphy is Sheets' minor son. Plaintiffs reside in a condominium unit that Sheets owns. Defendants are the condominium association of which Plaintiffs are members ("Association"); the Association's individual officers and directors; Argus Property Management, Inc., the Association's property management

company; and Linda Benford, Argus' employee who was the Association's property manager during the relevant time.

Sheets alleges that she suffers a handicap within the scope of the FHA and has an emotional support animal to assist her. Sheets' handicap often makes it difficult for her to walk. Sheets installed an underground invisible fence within the common elements of the condominium to dispense with the need to walk or constrain her emotional support dog while it was outside her home. Sheets alleges that, after she installed the invisible fence, Defendants took actions in violation of the FHA. Specifically, Sheets contends that Defendants violated the FHA by (1) failing to reasonably accommodate her need for an invisible fence to constrain her emotional support dog (Dkt. 32 Counts I and V) and (2) failing to make modifications to the condominium property to accommodate her need for an invisible fence (Dkt. 32 Counts II and VI).

Plaintiffs allege that Defendants also violated the FHA by (1) retaliating against Plaintiffs for exercising their rights under the FHA (Dkt. 32 Counts III and VII) and (2) discriminating against Plaintiffs based on their familial status (Dkt. 32 Counts IV and VIII).

With respect to the retaliation claim, Plaintiffs allege that, on or about May 5, 2014, Sheets and Kalagher filed a complaint with the Department of Housing and Urban Development ("HUD") against the Association, Argus, and individual Defendant James Tompkins, alleging discrimination and other violations of the FHA. According to
2

Plaintiffs, after they filed the HUD complaint, the Association initiated an arbitration proceeding against Sheets, seeking an order requiring her removal of the invisible fence, and retaliated against Plaintiffs by, among other things, selectively enforcing the Association rules against Plaintiffs.

The FHA discrimination claim alleges that Defendants notified Plaintiffs that Murphy and his friends could not play on the common elements, specifically, an empty lot that was located near Sheets' home. Plaintiffs allege that this amounted to discrimination based on familial status.

Benford moves for summary judgment on all of the claims alleged against her (Counts V-VIII). Benford argues that the record evidence is undisputed that she cannot be held personally liable for any FHA violations. She also argues that the record reflects that Plaintiffs cannot prove their claims against her as a matter of law. The Court agrees. As explained below, viewing the evidence in a light most favorable to Plaintiffs, the non-movants, no reasonable trier of fact could conclude that Benford assisted or contributed to any FHA violations. Accordingly, judgment should be entered in Benford's favor.

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

3

477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990).

However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

**I.     The FHA**

The FHA forbids discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B)). "To prevail on a [§] 3604(f)(3)(B) claim"—that is, a claim that a housing provider refused to reasonably accommodate a disability—"a plaintiff must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 Fed.Appx. 464, 467 (11th Cir. 2009).

Discrimination under § 3604 includes "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be

5

occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises." 42 U.S.C. § 3604(f)(3)(A).

Finally, the FHA also prohibits retaliation to the extent that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any right granted or protected under the FHA. *See* 42 U.S.C. § 3617; *Sofarelli v. Pinellas County,* 931 F.2d 718, 722 (11th Cir. 1991) (finding that a note threatening "to break [the plaintiff] in half," hitting his truck, shouting obscenities and spitting at him constituted coercion and intimidation under § 3617 when there was also an indication that there was a discriminatory motivation behind that conduct).

## II.     Personal Liability under the FHA

Benford's motion for summary judgment argues that Plaintiffs have not established, as a matter of law, her personal liability for any purported FHA violations. A plaintiff who has allegedly suffered FHA violations may seek damages, including punitive damages, from individual defendants who have personally committed or contributed to the FHA violation. *See Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, 141 F. Supp. 3d 1321, 1325-1326 (S.D. Fla. 2015); *Sabal Palm Condos of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014); *Copeman v. Briel*, No. 1:11-cv-75-SPM-GRJ, 2011 WL 2292113, at *5 (N.D. Fla. May 6, 2011); *see also Meyer v. Holley*, 537 U.S. 280 (2003)

(discussing vicarious liability for FHA violations); *Andujar v. Hewitt*, No. 02 CIV. 2223, 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) ("Aggrieved persons have long been permitted to assert Fair Housing Act claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies.").

### III. The Alleged Refusal to Accommodate the Invisible Fence

Benford argues that the record is undisputed that she did not have any personal involvement with the Association's refusal to accommodate Sheets' invisible fence. The Court agrees based on the record evidence. The record reflects that the Association, through its board members, concluded that Sheets' invisible fence was in violation of its rules. The Association directed Benford to send violation letters to Sheets, requesting that Sheets remove the invisible fence. Benford sent two violation letters to Sheets related to this issue. The Association's board voted to refer the matter to its attorney after Sheets failed to comply with the two violation letters.

On February 12, 2014, the Association's lawyer, Robert Moore, sent Sheets a letter directing her to remove the invisible fence. The letter stated, in relevant part, that the invisible fence was on the common elements of the condominium and that "[n]o unit owner may appropriate the common elements for their own use." The letter further stated that if Sheets did not remove the fence within thirty days, the Association would pursue all legal remedies including mandatory non-binding arbitration. These facts make clear

that Benford, as the Association's property manager, exhibited no control over the Association's actions related to the invisible fence and the Association's alleged refusal to reasonably accommodate Sheets' request. Notably, the record is undisputed that Benford had no authority to vote at the board meetings.

Importantly, although Benford sent two violation letters to Sheets on behalf of the Association related to the invisible fence, under the particular facts here she cannot be personally liable for "ministerial" functions she performed as the Association's property manager. *See Fair Hous. Ctr. of the Greater Palm Beaches, Inc.*, 141 F. Supp. 3d at 1326-27. In *Fair Housing Center of the Greater Palm Beaches*, the condominium required rental applications to include report cards of any minor residents under the age of eighteen; an application that did not include the report card would be denied. The plaintiff alleged that the report card requirement violated the FHA because it amounted to a refusal to rent based on familial status. The plaintiff included the association's property management company and property manager in the lawsuit. The court granted summary judgment in favor of the property manager. The court concluded that, although the property manager was involved in the screening of rental applicants, including informing the applicant of the report card requirement, the property manager's involvement was "purely ministerial." The record was undisputed that the property manager was not involved in the condominium's decision to reject an application based on the applicant's failure to provide a report card. *See id.*

Similarly, in *Sabal Palm*, although the court found that the board member of the association was liable for the association's FHA violation (a failure to accommodate the plaintiff's disability) because he "personally contributed" to the violation by voting against accommodating the disability, the association's attorney could not be liable because he had no authority to vote and did not in fact vote on Sabal Palm's decision to sue the plaintiff instead of simply granting her requested accommodation. *See Sabal Palm Condos of Pine Island Ridge Ass'n, Inc.*, 6 F. Supp. 3d at 1294. The court concluded that even if the attorney had advised the association that the plaintiff was not entitled to the accommodation, advice is not tantamount to unlawful discrimination. *See id.* (noting that the FHA violation occurred when the association acted on the lawyer's advice "and voted to not grant [the plaintiff's] accommodation request.").[1]

In their response, Plaintiffs rely on several cases that they argue stand for the proposition that a purely ministerial act is sufficient to establish liability under the FHA. As Benford points out in her reply, these cases dealt with motions to dismiss, not motions for summary judgment. While such allegations may be sufficient to survive a motion to dismiss under the "plausibility standard" applied at the dismissal stage, the Court concludes that Benford's minimal, ministerial involvement with the invisible fence issue

---

[1] This is relevant to Plaintiffs' argument that Benford advised the Association that Sheets' invisible fence was in violation of the rules because it was located on the condominium's common elements. Regardless of any advice on the issue, the Association, not Benford, concluded that violation notices and, ultimately, arbitration, were necessary actions to enforce the Association's rules. Moreover, there is no record evidence establishing that Benford had any authority to grant any purported accommodation request related to the invisible fence.

is insufficient to establish liability at the summary judgment stage. Accordingly, the Court grants summary judgment to Benford on Sheets' failure to accommodate claims (Counts V and VI).

## IV.     Plaintiffs' Retaliation Claim

Plaintiffs allege that, after they filed a complaint with HUD, Defendants, including Benford, retaliated against Plaintiffs by initiating the arbitration and selectively enforcing the Association's rules against Plaintiffs and their relatives. Benford argues that there is no record evidence demonstrating retaliation on her part. The Court agrees. As stated above, the Association, not Benford, determined that arbitration of the invisible fence dispute was necessary. And Benford had no authority to vote on issues that were discussed at the board meetings.

Moreover, there is simply no evidence that Benford took any adverse actions against any of the Plaintiffs based on the HUD complaint; in other words, there is no causal link between the filing of the HUD complaint (or any other purported protective activity) and any adverse action on Benford's part. There is also no evidence that Benford intimidated or threatened Plaintiffs based on their alleged protective activity. *See Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 369 Fed.Appx. 1, 3 (11th Cir. 2010) ("As for [the plaintiff's] FHA retaliation claim, he failed to allege conduct that rises to the level of coercion or intimidation under the FHA; he alleges only that he was retaliated against when his van, which was leaking oil, was towed, a board member

complained that he was violating the pool rules by using a mask and snorkel in the pool, and the same board member assessed fines against Wood for the oil leak and took photographs of him. That conduct does not rise to the level of intimidation or threats, nor did Wood demonstrate any nexus between the complained about conduct and his FHA protected activity."). Accordingly, the Court grants summary judgment to Benford on Sheets' retaliation claim (Count VII).

## V.    Plaintiffs' Discrimination Claim

Plaintiffs allege that Defendants, including Benford, discriminated against them based on their familial status in violation of the FHA because, on several occasions, Plaintiffs were told that Murphy and his friends were prohibited from playing on the common elements. Like the other claims against Benford, the record contains no genuine issue of fact for trial establishing Benford's personal liability for any purported discrimination. Indeed, the record does not reflect any action Benford personally took against Plaintiffs with respect to any alleged trespassing issue on the common elements. Accordingly, the Court grants summary judgment to Benford on Plaintiffs' discrimination claim (Count VIII).

## **CONCLUSION**

The Court concludes that Benford is entitled to summary judgment on the FHA claims asserted against her because the record does not establish a genuine issue for trial related to Benford's personal involvement with any purported FHA violations. It is worth

noting that Plaintiffs' response largely attempts to cloud and confuse the record by pointing to discrepancies in the record that are immaterial and unrelated to the substantive law applicable to the claimed causes of action.  This tactic is unavailing.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Linda Benford's Motion for Summary Judgment (Dkt. 109) is granted to the extent stated herein.

2. The Clerk of Court is directed to enter a final judgment in favor of Defendant Linda Benford and against Plaintiffs.

**DONE** and **ORDERED** in Tampa, Florida on October 19, 2016.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Even\2015\15-cv-1674.msj 109 Benford grant.wpd